IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JIM GREEN,

    Plaintiff,

vs.                                      No. CIV 08-0085 RLP/RHS

SANDIA NATIONAL LABORATORIES,

    Defendant

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jim Green ["Plaintiff" herein], is an African American male. He retired from the military in 1993 and has worked for Defendant Sandia National Laboratories ["Sandia" herein] since that time. He alleges violations of 42 U.S.C. §1981 and the New Mexico Human Rights Act stemming from Sandia's failure to promote him to various positions, allegedly because of his race. The matter presently before the Court is Sandia's Motion for Summary Judgment, filed November 17, 2008 (Doc. 20). The Court has examined the parties' submissions and the relevant legal authorities and conducted a hearing on February 23, 2009. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED.**

FACTUAL BACKGROUND

Plaintiff had a twenty year career in the military, with duties that included chief of a supply organization and as a commander responsible for organization at Randolph Air Force Base. (Plaintiff's Undisputed Fact 23, Docket 27). Before leaving the military, he obtained an associates degree, a Bachelor's degree in Management ,and a Master of Science in Business with an emphasis in Hospital Administration (Plaintiff's Undisputed Fact 2, and Plaintiff's Ex. 4, Docket 27).

Plaintiff was hired in January 1993 as an entry level contract representative/buyer in Sandia's Procurement Department. (Def's Undisputed Fact 2). He applied for five promotions between July 2, 2004 and April 24, 2006, all of which were awarded to other applicants. It is Sandia's failure to promote him to these positions that forms the basis for his claim of racial discrimination.

A.   Benefits Manager[1]

A job opening for Benefits Manager in the Benefits and Health Services was internally posted by Sandia manager, Linda Duffy, on July 2, 2004. (Def's Undisputed Fact 4). Plaintiff submitted his resume for this position. (Def's Undisputed Fact 5). Six internal candidates were interviewed by a selection committee composed in part of Dora Lovato-Teague, human resources consultant, manager Kay Sanderville, and Ms. Duffy. Plaintiff was interviewed, but was not in the top three candidates considered for the position. (Def's Undisputed Fact 6). The position was initially offered to Mary Kay Austin, who declined it. (Def's Undisputed Fact 7). Due to organizational changes, the job posting was changed to an external posting to cast a wider net for qualified candidates and to emphasize benefits experience as critical. (Def's Undisputed Fact 8). Of the external applicants, Mary Romero-Hart, an Hispanic female, was selected for the position based upon her qualifications, which included serving as the Director of Human Resources Program for the Albuquerque Public Schools, where she oversaw benefits programs for 12,000 employees. (Def's Undisputed Fact 9).

---

[1]Plaintiff did not challenge any of Sandia's undisputed facts related to this position. See Docket 27, p. 3).

2

B.    Staffing Manager for Human Resources

A job opening for Staffing Manager for Human Resources was posted by Sandia Senior Manager for Human Resources Strategies & Services, Karen Gillings, on September 13, 2005. (Def's Undisputed Fact 10). Plaintiff submitted his resume for this position. (Def's Undisputed Fact 11). Plaintiff has no human resources experience. (Def's Undisputed Fact 12).[2] A selection committee was assembled to evaluate and interview applicants for this position. (Def's Undisputed Fact 13). Forty individuals, from both inside and outside Sandia applied for the position. (Def's Undisputed Fact 14). Nine applicants were interviewed, six from within Sandia and three from without. Id. Ms. Gillings testified that Plaintiff was not selected for interview because his resume did not indicate a human resources body of knowledge. (Def's Undisputed Fact 15 - see footnote 2).

A pool of nine candidates was selected for interview: two African Americans, one Hispanic, four non-minorities, and three applicants from outside of Sandia whose ethnicity was not then known. (Def's Undisputed Fact 16). The selection committee established a set of questions to be asked of each applicant and then scored each applicant based on a matrix

---

[2]Plaintiff disputed Defendant's Undisputed Facts 12 and 15, stating that they are "an inaccurate statement of the facts and an inaccurate depiction of the documents." (Docket No. 27, p. 3). However, Plaintiff's deposition testimony, under oath, establishes his dearth of Human Resources experience:
Q:   How about Ms. Maxwell's prior Human Resources experience? Do you feel like you have more Human Resources Experience than Ms. Maxwell did?
A:   My answer to that has to be no. I had no Human Resources experience.
   (Docket 21, Ex. L.)
Plaintiff's attempt to controvert the fact of his lack of human resources experience, or Sandia's stated reason for not interviewing him for this position for this reason, raises a sham issue and will be disregarded. *See Burns v. Bd. of County Com'rs of Jackson County,* 330 F.3d 1275, 1282 (10th Cir. 2003); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

assigning numeric point values.  (Def's  Undisputed Fact 17).

An internal Hispanic applicant and an external Anglo female applicant, Kim Maxwell, were recommended by the selection committee as the top two candidates for the position. Ultimately, Ms. Maxwell was offered the position.  This choice was made on the basis of her extensive experience in human resources management, including Director of Lovelace Sandia Health system, Director of the St. Joseph Physician Division, Manager of Albuquerque OB/GYN Specialists, Inc. and Manager of the Lovelace Journal Center Clinic.  Ms. Maxwell's other qualifications included expertise in the areas of program development, financial planning and management, recruitment, employee training and compensation and incentive programs.  Ms. Gillings had never met Ms. Maxwell prior to Ms. Maxwell applying for the position. (Def's Undisputed Fact 18).[3]

Before offering the job to Ms. Maxwell, Ms. Gillings consulted with the Director of Sandia Human Resources, J.B. Jones. A Justification Memo was issued following the offer of employment to Ms. Maxwell and her acceptance of the offer.  (Def's  Undisputed Fact 21,

---

[3]Plaintiff does not  dispute that Ms. Maxwell was selected for this position (Docket 27, p. 11). He does dispute Defendant's Undisputed Fact 18 generally, stating that it is "an inaccurate statement of the facts and an inaccurate depiction of the documents." (Docket No. 27, p. 3).  He then cites to Exhibits 3 and 5, attached to his Response brief as factual support for this denial.  Ex. 3 is a copy of the job posting for the position at issue.  Ex. 5 is a copy of Ms. Maxwell's resume.  Ms. Maxwell's resume clearly references all of the qualifications cited in Undisputed Fact 18.  In his Response Brief, Plaintiff argues that Ms. Maxwell was unqualified for the position because she did not have the qualifications listed in the job posting:   (1) she did not have a Master's degree, (2) her Bachelor's degree was not in a field pertinent to Human Resources, but in education and (3) her managerial experience was four years rather than five years in duration. (Docket No. 27, p. 11-12). Although Ms. Maxwell's qualifications may have differed to some extent from the criteria in the job posting, that does not dispute the factors set out in Defendant's Undisputed Fact 18 as the reasons for offering the job to her.  Further, a review of Ms. Maxwell's resume shows management experience far in excess of the five years specified in the job posting.

citing to Docket No. 21, Ex. P).

C.      Health Services Department Manager

A job opening for Health Services Department Manager was posted by Linda Duffy, senior manager of Health Benefits & Employee Services, on February 2, 2006. (Def's Undisputed Fact 22). Plaintiff submitted his resume for this position on February 8, 2006. (Def's Undisputed Fact 23). Ms. Duffy was the team leader for the selection team for this position. Other team members were Kay Sanderville, Becky Statler and Larry Clevenger, M.D. (Def's Undisputed Fact 24). Sixty-three resumes were reviewed, and six candidates were selected for interview, including Plaintiff. The six interviewees consisted of two internal and four external applicants. The internal candidates were an African American (Plaintiff) and a non-minority. The ethnicity of the external candidates was not known at that time. (Def's Undisputed Fact 25).

The selection committee established a set of questions to be asked of each applicant and then scored each applicant based on a matrix that assigned a numeric point value. (Def's Undisputed Fact 26).

Following the interview process, the selection committee ranked the interviewees. The internal candidate who was ranked highest by the committee was first offered the position. That candidate declined the job after learning of the salary range being offered. (Def's Undisputed Fact 28). Thereafter, the job was offered to Anna Miller, the candidate who had ranked second. Ms. Miller accepted the position. (Def's Undisputed Fact 29). Based upon the scoring system completed by the selection committee, Plaintiff was the lowest ranking applicant who was interviewed. (Def's Undisputed Fact 30).

Plaintiff's interview presentation was not impressive to the selection team, as he appeared unprepared and unaware of the Health Clinic's accreditation status and operation, even though he worked with that same organization in a co-location capacity. (Def's Undisputed Fact 27). Plaintiff disputes this fact, stating that it is an inaccurate statement of the facts and an inaccurate depiction of the documents. In support of this denial, he cites to a conversation he had with Linda Duffy. He contends that Ms. Duffy told him that his experience as a military manager was not recent enough and Miller had been preselected for the position. Plaintiff does not dispute that he was the lowest ranking applicant. He does not challenge the criteria established by the selection committee, and indeed provides no evidence whatsoever from which the Court could infer that the selection criteria were improper.

Ms. Duffy issued a Selection Justification Memo regarding the selection of Ms. Miller for the position of Health Services Manager. (Def's Undisputed Fact 34).

D.      Senior Manager, Procurement Line Support.[4]

A job opening for Deputy Director, Senior Manager of Supply Chain Management Center (Procurement Line Support) was posted by Bonnie Apodaca, Director of the Supply Chain Management Center on March 2, 2006. (Def's Undisputed Fact 35). Plaintiff submitted his resume for this position on March 8, 2006. (Def's Undisputed Fact 36). This position required proficiency in the full span of the supply chain, addressing issues such as supplier interaction, line customer needs, staff development, stake holder requirements, operational efficiency and safety, interactions with other organizations, and working with other senior

---

[4]Plaintiff did not challenge any of Sandia's undisputed facts related to this position.

managers on a range of Sandia business issues. (Def's Undisputed Fact 37).

Ms. Apodaca assembled a selection team of six persons for review of candidates. This team was composed of three non-minorities and three Hispanics. (Def's Undisputed Fact 38).

There were 11 electronic bids for the position and the selection team screened, assessed and scored each candidate pursuant to the posted criteria for the position, utilizing the Kepner-Trego analysis[5] for scoring and ranking. (Def's Undisputed Fact 39).

Eight candidates were selected to be interviewed, including Plaintiff. The pool of candidates consisted of four non-minorities, two African Americans, one Hispanic and one Asian. (Def's Undisputed Fact 40). Ms. Apodaca did not participate in the interviews. The selection team rated and assessed the candidates' qualifications based upon the position's requirements and the interviewees' answers to the set of questions asked at each interview. (Def's Undisputed Fact 41). Of the eight candidates interviewed for the position, five of the candidates scored higher values than the plaintiff. (Def's Undisputed Fact 42).

Ms. Apodaca then conducted follow up interviews with the three top scoring candidates (an Hispanic and two non-minorities) and concluded that Nancy Davis, a non-minority female candidate, was best suited and qualified for the position. (Def's Undisputed Fact 43). Ms. Apodaca offered the position to Nancy Davis and issued a Selection Justification Memorandum. (Def's Undisputed Fact 44).

---

[5]Plaintiff has offered no evidence that the Kepner-Trego analysis employed by Sandia was discriminatory by design or in practice.

E.	Manager for Procurement Line Support[6]

A job opening for Manager of Procurement Line Support was internally posted by Nancy Davis, senior manager for Procurement, on April 24, 2006. (Def's Undisputed Fact 45). Plaintiff submitted his resume for this position on April 25, 2006. (Def's Undisputed Fact 46). The selection team for this position, which consisted of four non-minorities and one Hispanic, summarized the desired skills for the posting. (Def's Undisputed Fact 48). The selection team assessed, screened and scored the twelve electronic bids received pursuant to the posted criteria for the position utilizing the Kepner-Trego analysis for scoring and ranking. (Def's Undisputed Fact 49). The selection team identified seven candidates, including the plaintiff, from the original 12 applicants to be interviewed for the position. The interviewees consisted of one African American, one Hispanic and four non-minority candidates. (Def's Undisputed Fact 50).

Ms. Davis did not participate in the interviews, but did provide criteria to the selection team designed to elicit information from the applicants regarding their job skills and knowledge, procurement experience, leadership skills, interpersonal skills, corporate experience and strategic planning. This information was to supplement the questions promulgated by the selection team. (Def's Undisputed Fact 51).

Of the seven interviewees, five scored significantly higher than the plaintiff in the interview scoring matrix used by the Selection Committee. (Def's Undisputed Fact 52). The Hispanic male candidate, Al Lucero, was selected for the position based upon his

---

[6]Plaintiff did not challenge any of Sandia's undisputed facts related to this position.

qualifications. (Def's Undisputed Fact 53). Ms. Davis issued the Selection Justification Memo on Al Lucero regarding the Position of Line Procurement Manager. (Def's Undisputed Fact 54).

## LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENTS

Summary judgement is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.P. 56 ( c). The party moving for summary judgment has the initial burden of establishing that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir.1998) (stating that moving party may satisfy its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."). Once the movant meets its burden, the nonmovant must identify evidence that would enable a trier of fact to find in the nonmovant's favor. See *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992). Once the moving party meets its burden, the party opposing the motion must come forward with specific facts supported by admissible evidence that demonstrates the presence of a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-249 (1986); *Biester v. Midwest Health Servs., Inc*., 77 F.3d 1264, 1266 (10th Cir.1996). The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." See *Adler* 144 F.3d at 671. The court views the evidence and draws all reasonable inferences therefrom in the light most favorable

to the nonmoving party. *See Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir.1999). However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir.1988). Conclusory allegations alone cannot defeat a properly supported motion for summary judgment. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995). A material fact is one that may affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 247-48.

## DISCUSSION

Plaintiff's discrimination claim alleging failure to promote on the basis of race is analyzed under the *McDonnell Douglas* three-step burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). [7] Under this framework, Plaintiff has the initial burden of establishing a *prima facie* case of discrimination by showing that (1) he was a member of a protected class; (2) he applied for and was qualified for the position; (3) despite being qualified, he was rejected; and (4) after he was rejected, the position was filled. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir.2003). For the purposes of this Motion, the Court assumes that Plaintiff established a *prima facie* case of discrimination as to each position at issue.

Having established a *prima facie* case of discrimination, the burden shifts to defendant to articulate some legitimate, non-discriminatory reason for its employment action. *McDonnell*

---

[7]The *McDonnell Douglas* framework applies "[w]hen considering a violation of the NMHRA." *Aguilar v. Las Cumbres Learning, Inc.*, slip copy, 2008 WL 4107137, *18, D.N.M.,2008, quoting *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 127 P.3d 548, 551. "

*Douglas*, 411 U.S. at 802.  Defendants have done this for each of the positions at issue:

    A.  The position of Benefits Manager was filled by Mary Romero Hart.  Ms. Hart had extensive prior experience in this field, including overseeing benefits for twelve thousand employees of the Albuquerque Public Schools .

    B.  The position of Staffing Manager for Human Resources was filled by Kim Maxwell. Ms. Maxwell had extensive human resources experience, while Plaintiff had none.

    C.  The position of Health Services Department Manager was filled by Anna Miller.  Ms. Miller was ranked second highest of the six interviewed candidates, based on a scoring system established by a selection committee, and was offered the job only after the applicant with the highest score declined the job.

    D.  The position of Senior Manager, Procurement Line Support was filled by Nancy Davis.  Ms. Davis was in the top three of all candidates interviewed for the position, utilizing the Kepner-Trego Analysis for scoring and ranking.  Plaintiff was in the bottom three.

    E.  The position of Manager for Procurement Line Support was filled by Al Lucero.  Mr. Lucero scored significantly higher than plaintiff in the interview scoring matrix utilized by the selection committee, and was selected for the position based on his qualifications.

"Upon the employer's articulation of a legitimate, non[-]discriminatory reason … the presumption of discrimination established by the *prima facie* case simply drops out of the picture." *Kelly v. City of Albuquerque*, 375 F.Supp.2d 1182, 1210 (D.N.M. 2004)(internal quotations omitted). The plaintiff then must present evidence that the defendant's proffered

11

Case 1:08-cv-00085-RLP-RHS   Document 38   Filed 03/10/09   Page 12 of 18

reason for the employment decision was pretextual. *See id.* (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000)).  Plaintiff bears the burden of showing pretext. *McDonnell Douglas*, 411 U.S. at 804; *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).

> Pretext can be shown by " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons .' " *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir.1996) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994) (further citation omitted)). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1312 (10th Cir. 1997).

Plaintiff offers various rationale in support of his claim of pretext.  Each fails to raise a genuine issue of disputed material fact.

    A.    Plaintiff's opinion

Plaintiff relies his own opinion that he was more qualified than others for the positions at issue.  Even if the facts supported this view, which they do not, an employee's own opinion of his qualifications do not give rise to a material factual dispute regarding pretext. *Simms v. Olkahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999).

    B)    Hiring practices

Plaintiff asserts that Sandia has a precedent of promoting retired military officers into management positions, which was not observed in his case.  Plaintiff offers no evidentiary

12

support other than his own opinion that this was the policy of Sandia, or of the qualifications of any of these military hires for the positions into which they were purportedly promoted. Accordingly, this assertion does not contradict Sandia's proffered legitimate reasons for promoting others into the positions sought by Plaintiff.

      C)      Preselection of Anna Miller

Plaintiff contends that Anna Miller was preselected for the position Health Services Department manager because of her friendship with Linda Duffy. Even if Plaintiff's claim that Ms. Miller was preselected is accepted, that fact does not permit a finding of pretext. *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 13 (10th Cir. 2005)(citing *Mackey v. Shalala*, 360 F.3d 463, 468-69 (4th Cir.2004) (holding that the plaintiff's allegation of preselection, even if true, did not entitle a jury to conclude that its proffered explanation-that the candidate was better qualified-was a pretext for unlawful discrimination)).

      D.      Opinions of co-workers

In general, the opinions of co-workers do not undermine employment decision to hire, fire or promote. *Cf. Matthews v. Euronet Worldwide Inc.*, 2008 WL 822461, 271 Fed.Appx. 770, 777 (10th Cir. 2008) (unpublished). What is relevant in determining pretext are the facts as they appear to the person making the employment decision. *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d at 1231.

Plaintiff offered the testimony of two co-workers in an attempt to show pretext. Neither made the employment decisions at issue.

     Bernie Dinman had no personal knowledge of any of the jobs Plaintiff applied for, or the qualifications of any of the individuals who were promoted into or hired for those jobs.

[Docket 36, Dinman deposition p. 17 line 19 to p. 18 line 7].  Her testimony is simply not relevant to the employment decisions at issue.  She recounted observations she made 14-16 years previously, regarding a lack of support she felt Plaintiff received from his supervisor.  She could not say this lack of support was because of Plaintiff's race.  (*Id*. p. 11 line 19 to p. 12 line 6).   She stated that she brought this issue up to the supervisor, who said he would take care of it.  Thereafter, "I did observe that Jim, after a while, didn't need instructions or guidance or the information, so I assume that was taken care of." (*Id*. p. 11, lines 3-6).  Ms. Dinman also testified that she felt Plaintiff was not given the recognition he deserved for the work he did in the Procurement department, but had no evidence that would support this was because of his race. (*Id.* p. 14 , line 7to p. 15, line 4).

    Plaintiff offered the testimony of co-worker Julia De la Cruz, who stated that

    a)    Ten to 15 years previously, Sandia only promoted women, in her opinion to correct prior hiring practices whereby mainly white men were given managerial positions.  When asked the basis of her opinion, she stated, "You can see it.  And rumor.  There are always rumors."   (Docket 27, Ex. 2 p. 6 lines 3-25).

    b)    When Plaintiff was first employed, an Anglo female who was not in Ms. De la Cruz' organization who had less experience than Plaintiff was hired at a higher salary. (Id. p. 7, lines 7-p. 8 line 19).

    c)    She felt Plaintiff should have gotten the job that was given to Anthony Lucero because Plaintiff had been at Sandia longer.

As with Ms. Dinman, Ms. De la Cruz' testimony describes incidents too remote in time to be relevant to the employment decisions at issue.  Her testimony regarding the Anglo female is

inadmissible hearsay. F.R.Civ.P. 56(e) precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1526 n. 11 (10th Cir.1992) ( "In opposing a motion for summary judgment , the nonmovant must make a showing that, ' if reduced to admissible evidence,' would be sufficient to carry the nonmovant's burden of proof at trial.") ( quoting *Celotex*, 477 U.S. at 327).  Her personal opinion of the relative merits of Mr. Lucero's and Plaintiff's qualifications is not relevant.  See *Matthews* , supra.

E)  Incidents of racial animus or discrimination

Plaintiff refers to incidents of alleged racial animus or discrimination not directed toward him.

1)  Ms. Carson

Plaintiff offered confusing and incomplete testimony, allegedly about a Ms. Theresa Carson, an African-American female:

Q:  And she didn't get them?
A:  No.
Q:  Did she think it was because she was Black?
A:  I never asked her.  That was just my opinion.

(Docket 27, Ex. 2, pl 26, lines 3-8).

The Court will assume Ms. Carson applied for a job and didn't get it.  We know nothing more about Ms. Carson, her qualifications, the job she applied for, the method of selection, or the qualifications of the individual who got the job.  Ms. Carson has nothing to do with the employment decisions made in this case, and provides no inference of pretext in the making of those decisions.

      2)      Mo-town

Plaintiff contends in his brief that there have been discriminatory comments against African American's including referring to an area where a number of African-American's had their offices as Mo-town, citing to his own deposition testimony. (Docket No. 27, p. 7). That, however is not what the cited deposition testimony states.

      Q:      Why do they call it Mo-town?  Mobile town?  Like mobile?
      A:      I don't know.

(Docket 37, Deposition of Green, p. 48 lines 4-6).

      3)      Racial slurs

Plaintiff contends that Dan Naru publicly stated "those tar babies are at it again" and that despite numerous racial slurs against African Americans, Sandia took no corrective action. (Docket 27, p. 7).

Mr. Naru's statement was allegedly made in 1998 or 1999 to a Carla Smith, not to Plaintiff.  (Docket 37, Deposition of Green,  p. 48 line 23- p. 49 line 6; p. 51 lines 16-18). Plaintiff must demonstrate that a nexus exists between this allegedly discriminatory statement and Sandia's employment decision. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).  This he has utterly failed to do.

      F)      Statistics

Plaintiff asks the court to infer pretext based on his testimony that the number of African Americans employed by Sandia dwindled from 300-350 in the mid 1990s to 210-215 in 2005/2006, and that he was the only African American hired in his department from 1993-2006.

"Statistics taken in isolation are generally not probative of ... discrimination. Specifically, statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext." *Sanders v. Southwestern Bell Tel., L.P.*, 544 F.3d 1101, 1110 (10th Cir.2008) (citations, brackets, and internal quotation marks omitted).  Plaintiff has presented no information regarding the number of qualified African-Americans who applied to work at Sandia, or in the Procurement department in particular. Without that data, his "statistics" can not be meaningfully evaluated. *See Carney v. City & County of Denver*, 534 F.3d 1269, 1274-76 (10th Cir.2008) (evidence that under 1% of employees were African-American females did not show discrimination without evidence of the number of qualified African-American females in the applicant pool); *Ghent v. Moore*, 519 F.Supp.2d 328, 338-39 (W.D.N.Y.2007) (fact that plaintiff was sole African-American faculty member in University program was not, by itself, probative of unlawful race discrimination).

## CONCLUSION

The Tenth Circuit has frequently stated that is it not the role of the court to act as a super personnel department that second guesses an employer's business judgment. *Simms*, 165 F.3d at 1329; *Kendrick*, 220 F.3d at 1233; *Jones*, 349 F.3d at  1267.  Plaintiff has failed to demonstrate that the reasons stated by Sandia for its employment decisions were pretextual.  There exist no genuine issues of disputed material fact.  Accordingly, Sandia is entitled to Summary Judgment on Plaintiff's claims of violations of 42 U.S.C. §§ 1981 and the New Mexico Human Rights Act stemming from Sandia's failure to promote him.

**WHEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

                                                      /s/ Richard L. Puglisi
                                                    Richard L. Puglisi
                                          United States Magistrate Judge
                                              (Sitting by designation)